OPINION OF THE COURT
William J. Kent, J.
Objections to the order entered on October 27, 1998 of the Honorable Elaine M. Crosson, Esq., Hearing Examiner, having been filed with the court, the following disposition is made.
The parties were married in 1973 in Suffolk County, New York. There is one child born of their marriage, to wit: Bret Whitman, date of birth January 31, 1979. In 1979, the petitioner began divorce proceedings in Supreme Court, Suffolk County. Sometime during 1979, the respondent relocated to Colorado. In August of 1979, the petitioner filed a support petition in Family Court, Suffolk County, seeking both child support and spousal support. The matter was transferred to Colorado under the then existing New York Uniform Support of Dependents Law (Domestic Relations Law former art 3-A [USDL]) due to respondent’s relocation. During this time, the matrimonial action in Supreme Court forged ahead. The respondent not having answered in the divorce action, a default judgment was eventually entered on August 5, 1980. The judgment contained the following support provisions:
*3 For child support, the. sum of $60 per week; for spousal support, the sum of $65 per week, for a total of $125 per week. Additionally, respondent was required to provide medical/health insurance for the petitioner and the parties’ son.
Meanwhile, the USDL matter continued in Colorado resulting in a stipulation and order of support being entered into on September 25, 1980, approximately six weeks after the divorce. That order required the respondent to pay $100 per month for child support. No mention was made of either spousal support or health insurance.
It is undisputed that from September of 1980 until sometime in 1984, respondent paid $100 each and every month, in accordance with the USDL order. At some point in 1984, respondent apparently missed a couple of payments, whereupon the petitioner filed a USDL petition to enforce her New York order of support. Petitioner admitted during the hearing on the current petition that she only filed in 1984 because respondent missed several payments of the $100 per month. That case was eventually dismissed for jurisdictional reasons.
It is further undisputed that from 1984 to the present, a period of some 14 years, respondent has not missed any payments of $100 per month pursuant to the Colorado order.
In 1997, the respondent sent a letter to the court in Colorado, asking that they find his son to be emancipated. Respondent also sent the letter to the petitioner. In response, the petitioner began this enforcement proceeding, seeking to enforce the support provisions of the 1980 judgment of divorce. On July 31, 1998 a hearing was held before a Hearing Examiner, resulting in an order. The Examiner found that the respondent had defaulted and failed to pay the support ordered by the New York judgment of divorce. The Examiner found that the petitioner had not waived her right to enforce the judgment and to collect those monies. The Examiner further found that because the order that petitioner sought to enforce was from 1980, the six-year Statute of Limitations applied. The Examiner also found that the child was not emancipated. The Hearing Examiner entered money judgments as follows: for child support arrears, $13,410; for spousal support arrears, $23,735; and for unpaid medical, $10,704. This objection ensued in accordance with Family Court Act § 439 (e).
To begin with, there is no question that respondent failed to prove that the child was emancipated. The Hearing Examiner correctly found that the child was still dependent upon his mother for support. The Hearing Examiner also correctly found *4 that the respondent failed to obey the New York order of support. There is no question that the order was a valid order, ostensibly enforceable in this court. Further, the Hearing Examiner correctly applied the six-year Statute of Limitations because the order being enforced predated the Legislature’s 1987 enactment of CPLR 211 (e). The only real question before the court is whether there was a waiver on the part of the petitioner of her right to enforce the 1980 judgement of divorce. This court believes there was such a waiver.
From 1980 until the filing of the within enforcement petition, the respondent paid $100 per month to the petitioner as and for child support pursuant to the Colorado order of support, missing only two payments sometime in late 1983 or 1984. Petitioner accepted this $100 per month, only going to court when the respondent did not make those payments. Petitioner knew where respondent lived for most of the 17 years, having admitted so during the hearing. Petitioner further admitted that she corresponded with the respondent “on and off’, whenever she knew where he was living, sending respondent progress reports regarding their child, in addition to cards, letters and so forth. (See, transcript, at 102-103.)
The Colorado order of support was obtained by and consented to by the petitioner. Indeed, the record reflects that the petitioner was quite willing to accept the $100 per month until 1997, when respondent, mistakenly believing that his son was emancipated, sent a letter to the Colorado court that issued the support order. In fact, petitioner testified that during the entire 17 years, all the time she was corresponding with the respondent, she never mentioned the fact that he was paying $100 per month to the respondent even though the judgment of divorce would entitle her to far greater support. Specifically, she stated that she never broached the subject because: “Well, the basic reasons were that I do know that he didn’t work at times. He was working off the books, or he was working odd jobs and that. So it wasn’t pursued. No, it wasn’t. I proceeded to just live my life, and keep things mellow for my son”. (Transcript, at 104.)
It was only when petitioner feared that the $100 per month would cease that she decided to enforce the judgment of divorce. In fact, petitioner testified at the hearing that she only filed the current enforcement petition in response to respondent’s letter seeking that his son be declared emancipated and because “he [respondent] did not want to pay any more money.” (Transcript, at 108.) It is clear that the petitioner was *5 fully aware of her support rights under the divorce judgment and elected not to enforce those rights for nearly 17 years.
The seminal case concerning the issues herein is the Court of Appeals decision in Matter of Dox v Tynon (90 NY2d 166 [1997]). In that case, the Court of Appeals held that certain defenses, such as laches, were no longer available to respondents who fail to obey child support orders. The Court noted the changes in the law that had occurred since 1980, particularly the legislative changes which shifted the burden to a respondent to seek prospective modification of a court order of support. However, in Dox, the Court did not “slam the door”, so to speak, on the possibility of waiver as a defense to enforcement actions. Rather, the Court of Appeals referred to the law existing prior to the legislative changes enacted between 1980 and 1987, namely that “[a] custodial parent’s right to collect child support payments pursuant to court order is subject to waiver, both express and implied”. (Matter of Dox v Tynon, at 174.) The Court then applied the law as it stands now to the doctrine of waiver. In Dox, the respondent had not paid a penny of child support for 11 years. He claimed that he and the petitioner had an agreement; the petitioner would not come after the respondent for child support if the respondent would stay out of her life and that of the children. There was no evidence of any such agreement. Respondent claimed it was an oral agreement between the parties. Neither the trial court nor the Appellate Division found that such a conversation took place. It didn’t matter; the Court of Appeals held that no waiver can be found to have occurred merely based on the fact that the petitioner waited so long to enforce her order of support and assumed responsibility to support the children during that time. In the Court’s mind, to do so would reward the respondent for not having paid support for 11 years, while punishing the petitioner for having delayed enforcement. The Court noted that allowing an implied waiver under the circumstances in Dox would have circumvented the intent of the Legislature by allowing retroactive modification of a child support obligation, something which had been expressly prohibited by the Legislature. (Matter of Dox v Tynon, at 173.) The Court further noted that “[r]ecognizing implied waiver under these circumstances would, moreover, be tantamount to placing the burden back on child support recipients to initiate enforcement proceedings.” (Matter of Dox v Tynon, at 176 [emphasis added].) The words “under these circumstances” make it plain that the Court of Appeals intentionally left open the possibility that under *6 certain other circumstances, a waiver defense would be allowed. In fact, subsequent to Matter of Dox v Tynon, there appear to be no reported cases wherein a waiver was found to have occurred based only upon the amount of time that the recipient of support waited to enforce an order. (See, Werner v Werner, 176 Misc 2d 299; Matter of Knotts v Vezina, 247 AD2d 539 [2d Dept 1998]; Howfield v Howfield, 250 AD2d 573.) These decisions are in keeping with the Court of Appeals holding in Matter of Dox v Tynon (supra).
The case at bar is distinguishable from Dox (supra). In Dox, the respondent had not paid any child support for 11 years. In the within case, the respondent has, in fact, been paying child support for 17 years, pursuant to a court order, which the petitioner herself obtained. That court order was the result of petitioner initiating a petition in Family Court in 1979, which resulted in an order in Colorado a year later. The Colorado order was issued after the judgment of divorce was granted and, since that time (Sept. 1980), the respondent has dutifully complied with the Colorado order, and the petitioner has accepted each and every check, paid by respondent each and every month for the last 17 years. These are clearly different facts than Dox. Additionally, by her own testimony, the petitioner had no intention of enforcing the judgment of divorce until the respondent sent a letter to the Colorado court seeking to have his son, who was not living with either party and was 19 years old at the time, declared to be emancipated. In fact, petitioner willingly accepted the arrangements for 17 years, only seeking to enforce her order as retribution against the respondent seeking to legally end his support obligation. Petitioner was not silent nor did she fail to take any action during the disputed time. Unlike Dox, there was more than the mere passage of time. Based upon the above, this court finds that the petitioner expressly waived her right to collect support under the judgment of divorce.
Additionally, the court notes that the Family Court Act states that with regard to arrears alleged to have accrued that are not for child support, the court has authority to reduce or annul those arrears under certain conditions. Specifically, Family Court Act § 451 states that with regard to nonchild support arrears “The court shall not reduce or annul any other arrears unless the defaulting party shows good cause for failure to make application for relief from the judgment or order directing payment prior to the accrual of the arrears”. Accordingly, and to the extent that the alleged arrears herein do not relate *7 to child support, the court finds that based upon the facts and circumstances outlined above, the respondent has shown good cause in not seeking relief with regard to his spousal support obligation as well as his obligation to share in the cost of unreimbursed medical costs, based upon the petitioner’s waiver.
It is ordered that the order of the Hearing Examiner entered November 19, 1998, in light of the foregoing, is vacated, the order of support from Colorado is adopted and continued, and the petition is dismissed.