[704 NYS2d 599]

In the Matter of ALEXANDER GRANT, Respondent, v VIRGINIA GRANT, Appellant.

First Department, March 30, 2000

### APPEARANCES OF COUNSEL

*Brondi Borer* for respondent.
*Bruce A. Young* for appellant.

### OPINION OF THE COURT

ELLERIN, J.

At issue in this appeal is whether the Family Court erred in overturning the findings of the Hearing Examiner and finding that respondent mother failed to establish that petitioner father had impliedly waived his right to child support.

The parties are the parents of one minor child, Tessa, born on September 3, 1986. They entered into a separation agreement on May 19, 1989, and were divorced on September 21, 1990. The agreement provided for the father to have custody of Tessa and receive from the mother $50 per week in child support. At the time of the separation, Tessa was still nursing, so she lived with the mother all week, and the father saw her on weekends. Even after she stopped nursing, Tessa lived with the mother from Monday to Thursday and occasionally on Sunday, and most summers, for the next several years. The parties lived within a block of each other and both addresses were on file at Tessa's school. Until Tessa was old enough for school, she accompanied the mother on trips to England a few times a year to visit the mother's boyfriend, who resided there. Once Tessa was in school, the mother traveled to England less frequently and took Tessa with her only during school vacations. Since the father worked nights, on occasions when the mother went to England without Tessa, the mother paid for a babysitter to stay with Tessa at the father's house. The mother bought most of Tessa's clothes, shoes, books and toys. She paid no child support to the father.

In June 1995, the parties agreed that Tessa would benefit from spending every night of the school week in the same household. The father had remarried and his wife was at home nights while he worked. He suggested a more structured visitation schedule. The mother filed a petition to enforce visitation access, and in October 1995, a court order of visitation was entered that provided for Tessa to stay with the mother every other weekend and every other Monday evening.

The father then sought enforcement of the weekly $50 in child support and an upward modification of child support. An

evidentiary hearing was held before a Hearing Examiner.* The mother testified that she never knew she was required to pay child support. The father and an attorney friend of his drew up the separation agreement, which provided that the father had custody and she could see Tessa any time she wished. They told her there had to be a minimum child support figure in the agreement but that she would not have to pay it. Moreover, she had never been ordered in court to pay the $50 per week.

The mother testified that she and the father had agreed to the de facto shared custody arrangement in lieu of her paying child support. She claimed that the father filed his support petition in revenge for her filing her visitation petition and because they had argued over an inheritance of $10,000 from the mother's maternal grandfather that had been put into a trust for Tessa's education. The father insisted that he be shown the financial records and argued that he should get the money for Tessa's support. The mother's family refused to turn over the money or the documents.

The father denied that there had been any agreement substituting physical custody for child support, although he admitted that the mother cared for Tessa while he was working and paid for a babysitter on those evenings when she was unable to be with Tessa. The father denied that the mother had provided for most of Tessa's needs. He testified that his sister bought most of Tessa's clothes and the mother tended to buy Tessa the "high ticket" items such as a fancy pair of shoes or a nice coat.

The Hearing Examiner concluded that the parties' actions constituted an implied waiver of the mother's child support obligation. She found that neither party contemplated the actual payment by the mother of child support in a fixed amount, notwithstanding their agreement, and that they had worked out an arrangement that replaced the child support order—until June 1995. The mother shared physical custody of Tessa in such a way as to save the father child care expenses during the week; notably, she paid him $50 for every night she was unable to watch Tessa while he was at work.

The father submitted objections to the Hearing Examiner's findings. The Family Court held that the hearing examiner had erred in finding *sua sponte* that the father had waived his right to child support, and remanded the matter for a new hearing on the defenses of waiver and/or laches.

---

* The Hearing Examiner's findings with respect to petitioner's request for modification of the support order were not challenged.

Following additional hearings, the Hearing Examiner reached the same conclusion, namely, that an implied waiver of child support existed between the parties, at least until June 1995. The father filed objections to these findings. The court granted his objections and awarded him $12,100 in arrears.

We reverse.

The Family Court likened this case to *Matter of Dox v Tynon* (90 NY2d 166), in which petitioner waited 11 years to enforce respondent's child support obligation. During those years, petitioner and her new husband supported the children. Respondent claimed that petitioner had agreed to waive her right to support in exchange for his agreement to stay away from her and the children. Petitioner denied that they had engaged in any such conversation. Neither the Family Court nor the Third Department made a finding that the conversation had taken place. Mindful of the statutory prohibition against retroactive modification of child support arrears, the Court of Appeals held that petitioner had not, by delaying enforcement and assuming responsibility for the support during that delay, implicitly waived her right to the outstanding support.

In the instant case, the court held that the facts supported a similar conclusion regarding an implied waiver: "Respondent's testimony that she was unemployed when the agreement was made and that petitioner informed her that he would not ask her for any child support is not sufficient to nullify the support term of the parties' agreement. Further petitioner testified that he talked with respondent about her child support obligation on several occasions. Petitioner's testimony that he did not consider respondent's payment of babysitters' fees when she was unable to exercise her visitation rights was a substitute for the support due under the divorce judgment was credible. Given the parties' conflicting testimony regarding their intentions and performance of the underlying agreement, this Court does not find any implied waiver of the respondent's child support obligation."

Initially, we note that the fact finding hinged almost entirely on credibility. Neither the Family Court nor this Court were present at the hearing to see the witnesses, hear their testimony and observe their demeanor. The Hearing Examiner was in a unique position to assess credibility as well as to evaluate the evidence, and her findings are therefore entitled to great deference (*Matter of Andre v Warren*, 192 AD2d 491).

The Hearing Examiner found that the parties had ongoing contact with one another, a cooperative and continuous

custodial arrangement for Tessa's care, and many conversations about the payment of money by the mother to the father for babysitting, clothing and the like, and yet no mention was made of child support. She stated: "Although petitioner testified that he had previously asked respondent for child support payments, his testimony was vague and not found to be credible in view of the totality of the circumstances and the court's other findings."

We hold now, deferring to the Hearing Examiner's credibility findings, that the parties did engage in "affirmative conduct evidencing a waiver" (*Mitchell v Mitchell*, 170 AD2d 585; *Matter of Whitman v Whitman*, 180 Misc 2d 1). Unlike the noncustodial parent in *Dox (supra)*, who for 11 years contributed nothing to the support of his child, the mother in the instant case was noncustodial only on paper. Until June 1995, she and the father shared physical custody of Tessa in such a way as to save the father child care expenses. When Tessa was in the mother's care, the mother met her everyday financial needs, providing her with clothing, books and toys, as well as special things such as fancy shoes or a nice coat. When the mother was unable to be present, she paid for a babysitter. The father lived by this arrangement for six years.

The mother does not contend that the delay in enforcement alone indicates an implied waiver. She contends that their arrangement in its totality replaced the $50 per week in child support provided for in their agreement. The Hearing Examiner agreed, observing, "It appears that neither party even remembered the agreement until trouble surfaced over visitation in the summer of 1995, coupled with a dispute the father was having with the mother's family over an inheritance he believed should come to him for the child." Nothing in the record leads us to conclude that the Hearing Examiner's determination was improper.

Accordingly, that portion of the order of the Family Court, New York County (Sheldon Rand, J.), entered on or about December 9, 1997, granting petitioner's objections to the Hearing Examiner's findings and decision and awarding petitioner $12,100 in child support arrears, should be reversed, on the law and the facts, without costs, petitioner's objections denied and the finding and decision of the Hearing Examiner dated September 19, 1997 reinstated.

ROSENBERGER, J. P., WALLACH and SAXE, JJ., concur.

Order, Family Court, New York County, entered on or about December 9, 1997, reversed, on the law and the facts, without

costs, petitioner's objections denied, and the finding and decision of the Hearing Examiner dated September 19, 1997 reinstated.